RONALD G. ROSENBERG (Bar No. 108602)
ROSENBERG & KOFFMAN
2029 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 553-1400
Facsimile: (310) 553-1401

Attorneys for Defendants,
Ocean Alexander Marine Center, Inc., Ocean
Alexander Services, L. L. C. and Ocean Alexander
Marine Yacht Sales, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC., OCEAN ALEXANDER SERVICES, L. L. C., and OCEAN ALEXANDER MARINE YACHT SALES, INC.<br><br>Defendants. | Case No. SACV12-1994 DOC(ANx)<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; DECLARATIONS OF JOHNNY CHUEH AND HSIUNG WEI TSENG IN SUPPORT THEREOF**<br><br>Date: June 2, 2014<br>Time: 8:30 a.m.<br>Courtroom: 9D |

Defendants, Ocean Alexander Marine Yacht Sales, Inc. ("OAMYS" or "Defendant"), hereby move this Court for an order granting summary judgment as to each cause of action asserted against them.

The Defendant is named in this action for alleged breach of warranties on a yacht purchased by Plaintiff from a third party and manufactured by a third party. OAMYS is being sued on as an alleged alter ego of the manufacturer, but the

1  undisputed facts do not support such a claim. Further, as explained in the Motion, OAMYS sells new and used boats, but had no involvement in the sale of the subject yacht.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 30, 2014.

Dated: May 5, 2014                    ROSENBERG & KOFFMAN

By: _____
Ronald G. Rosenberg
Attorneys for Defendants,
Ocean Alexander Marine Center, Inc.,
Ocean Alexander Services, L. L. C.,
and Ocean Alexander Marine Yacht Sales, Inc.

# MEMORANDUM OF POINTSAND AUTHORITIES

## 1. Factual Background

In 2005, Plaintiffs purchased a new 98 foot yacht manufactured by Alexander Marine Co., Ltd. ("Alexander Marine"), which is a Taiwanese entity. (Complaint ¶11 and 13.) The yacht, now known as the Jelly Bean II, was purchased by Plaintiffs from the local Newport Beach distributor for Alexander Marine yachts at that time, Orange Coast Marine, Inc. ("Orange Coast").

In late 2011, the Plaintiffs reported alleged deficiencies to Alexander Marine with the Jelly Bean II. The only basis for potential liability for OAMYS is that Plaintiff alleges that they alter ego of the manufacturer, Defendant, Alexander Marine. As explained below, there are no facts whatsoever to support such a claim and as a matter of law, the moving Defendant is entitled to judgment in its favor in this action.

## 2. Rules Governing Motions for Summary Judgment

In Celotex Corp. v. Catrett (1986) 477 U.S. 317, 322–25, 106 S. Ct. 2548 the Court stated the general rule regarding the burden of proof for Motions for Summary Judgment. " 'A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact …. the burden on the moving party may be discharged by "showing"-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.').''

## 3. There Is No Factual Dispute Regarding Each of the Moving Defendants.

Defendant, OAMYS is, and since September 1999, has been, a Washington

corporation which sells new and used boats. OAMYS had no involvement in the sale of the subject yacht. The Jelly Bean II was sold to Plaintiffs by the Orange Coast, which was the California dealer for Alexander Marine at that time. Currently, OAMYS sells new yachts manufactured by Alexander Marine and by Tiara Yachts. OAMYS is not owned by Alexander Marine and only shares one minority owner in Alexander Marine.

Since Alexander Marine is located in Taiwan, it uses its United States' dealers to act as conduits when repairs or warranty items are needed for its yachts located in the United States. The warranty claims are submitted to Alexander Marine in Taiwan and it issues a decision on whether the item in need of repair is covered by its warranty.

The repairs are done by third parties in the United States, and the dealers (such as Orange Coast Yachts and OAMYS) relay issues and sometimes advance money to pay for warranty items. In that situation, Alexander Marine then reimburses the dealers for any such advances.

### 4. Plaintiff Cannot Prove Alter-Ego Allegations Against Moving Parties

In *Sonora Diamond Corp. v. Superior Court* (2000 5th Dist) 83 Cal.App.4th 523, 539, the California Court of Appeal explained that "[a]lter ego is an extreme remedy, sparingly used. (*Calvert, supra*, 875 F.Supp. at p. 678.)" The Court in *Sonora Diamond, supra*, at 538-539, further explained that:

> In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. (*Automotriz etc. De*

*California v. Resnick* (1957) 47 Cal.2d 792, 796, 306 P.2d 1; *Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358, 251 Cal.Rptr. 859; *Alberto v. Diversified Group, Inc., supra,* 55 F.3d at p. 205; *Calvert, supra,* 875 F.Supp. at p. 678.) "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." (*Roman Catholic Archbishop v. Superior Court, supra,* 15 Cal.App.3d at pp. 406, 411, 93 Cal.Rptr. 338; *Associated Vendors, Inc. v. Oakland Meat Co., supra,* 210 Cal.App.2d at pp. 838–839, 26 Cal.Rptr. 806.) Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. (See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285, 31 Cal.Rptr.2d 433; *Associated Vendors, Inc. v. Oakland Meat Co., supra,* 210 Cal.App.2d at pp. 838–839, 26 Cal.Rptr. 806; *Alberto v. Diversified Group, Inc., supra,* 55 F.3d at p. 205.) No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. (*Talbot v. Fresno–Pacific Corp.* (1960) 181 Cal.App.2d 425, 432, 5 Cal.Rptr. 361.)

In the present case, Alexander Marine is separate and distinct from the other Defendants. With the exception of one minority shareholder (Johnny Chueh owns

6 or 7%) in Alexander Marine, there is no common ownership of Alexander Marine and there are no facts to conclude that one entity is a subsidiary of the other. (See Declaration of Chueh ¶ 8-9.) Alexander Marine is based in Taiwan, maintains no offices in the United States, sells yachts around the world and has sales dealers for various parts of the United States and other parts of the world. (See Declaration of Tseng ¶ 4-7.)

Importantly, neither of the two factors which need to exist to prove alter ego are present in this case. There are no facts to show that there is a "<u>unity of interest and ownership</u> between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." (*Sonora Diamond, supra*, at 538.) Alexander Marine is not, and has never been, a shareholder in OAMYS and other than OAMYS purchasing boats from Alexander Marine, there is no relationship on how the two businesses are operated. (Declarations of Chueh ¶ 2; Tseng ¶ 7.)

Johnny Chueh, who owns 6 or 7% of the shares in Alexander Marine and is also the sole shareholder in OAMYS; there are no other common shareholders and they have no employees in common. OAMYS is based in the United States and conducts its business of selling boats here and not in Taiwan. Alexander Marine builds yachts in Taiwan and has distributors around the world to sell its boats. OAMYS is just one of the distributors in the U.S.

The second required element to prove alter ego is that there "<u>must be an inequitable result if the acts in question are treated as those of the corporation alone.</u>" (*Sonora Diamond, supra*, at 538.) In this case, there are no facts to demonstrate that there could or would be an inequitable result if the recognition of the separateness of the two entities is recognized and there are no facts in dispute to challenge this conclusion. As pointed out by the Court in *Sonora Diamond, supra*, at 538,

> Misconduct or injustice was not proved by Sonora Mining's

apparent inability to meet the balance of its endowment obligation to the District. The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard. (*Associated Vendors, Inc. v. Oakland Meat Co., supra*, 210 Cal.App.2d at p. 842, 26 Cal.Rptr. 806; *Alberto v. Diversified Group, Inc., supra*, 55 F.3d at p. 207; *Lowell Staats Mining Co., Inc. v. Pioneer Uravan Inc.* (10th Cir.1989) 878 F.2d 1259.)

In this case, there are no material facts in dispute relating to the issue of an inequitable result. There is no showing Alexander Marine cannot meet its debts or that there has been any fraud perpetrated by any of the moving parties or by Alexander Marine to create such an inability by Alexander Marine. In the *Sonora Diamond* case, the Court found that one entity paying money to the other to assist in paying its bills did not show misconduct or injustice since there was no showing of fraudulent intent. *Sonora Diamond* involved a parent and subsidiary corporation and that is not the case here.

Similarly, misconduct or injustice was not proved by the many advances made by Diamond for the benefit of Sonora Mining because none were shown to have been made with a fraudulent or deceptive intent. (*Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc., supra*, 878 F.2d at p. 1262.) The parent is not "exposed to liability for the obligations of [the subsidiary] when [the parent] contributes funds to [the subsidiary] for the purpose of assisting [the subsidiary] in meeting its financial obligations and not for the purpose of perpetrating a fraud." (*Id.* at p. 1263.)

1  (*Sonora Diamond, supra*, at 538.)

2  In the landmark case of *Automotriz De California v. Resnick* (1957) 47
3  Cal.2d 792, 795-797, the California Supreme Court found that the individual
4  defendants were personally liable where they had failed to utilize the corporation as
5  a separate entity, did not issue stock or obtain a permit for issuance of stock, failed
6  to prove that they adequately capitalized the entity and where two of the purported
7  shareholders actually funded the business from their own bank accounts. The
8  corporation in that case filed bankruptcy.

9  There are no facts in the pending case to indicate that Alexander Marine is in
10 financial trouble, is failing to pay its debts or is out of business. To the contrary,
11 Alexander Marine is a viable entity which has been conducting business since the
12 late 1970's and continues manufacturing and selling new yachts.

13 **5.  Conclusion**

14 It is clear from the foregoing that there are no facts whatsoever to support the
15 claims against each of the moving parties. As a result, they each request that the
16 Court grant this Motion and issue judgment in their favor.

18 Dated: May 5, 2014                                    ROSENBERG & KOFFMAN

By: _____
Ronald G. Rosenberg
Attorneys for Defendants,
Ocean Alexander Marine Center, Inc.,
Ocean Alexander Services, L. L. C.,
and Ocean Alexander Marine Yacht
Sales, Inc.

## DECLARATION OF JOHNNY CHUEH

I, Johnny Chueh, declare:

1. I have personal knowledge of the facts contained herein and if called as a witness, I could and would testify competently thereto.

2. I am, and always have been, the sole shareholder and director of Defendant, Ocean Alexander Marine Yacht Sales, Inc. ("OAMYS").

3. OAMYS is a Washington corporation that was formed on September 1, 1999. A true and correct copy of its Certificate of Incorporation is attached hereto and incorporated herein as Exhibit "1". OAMYS is a sales agent for boats manufactured by Alexander Marine Co., Ltd. in Taiwan and for Tiara Yachts, which are manufactured in the United States. Neither I, nor any of the Defendants in this case, have any ownership interest in Tiara Yachts.

4. OAMYS did not sell Plaintiff his yacht, known as the Jelly Bean II, which is the subject of this lawsuit.

5. OAMYS was not involved in the purchase, sale or maintenance of the yacht involved in this case. The yacht was sold by a California company known as Orange Coast Marine, Inc. That company was the exclusive California dealer for Alexander Marine Co., Ltd. until the fall of 2009.

6. My father was the founder of Alexander Marine Co., Ltd. in Taiwan in about 1978. He passed away several years ago. I attended college in the United States. In the mid-1990's I decided to start selling his yachts in the United States through my own dealership. I created OAMYS for that purpose and it has been a yacht dealer since that time. As a dealer, OAMYS purchases yachts from Alexander Marine Co., Ltd., has them shipped to the United States and then sells them here. Other U.S. dealers work similarly.

7. Alexander Marine Co., Ltd. has numerous shareholders, including its largest shareholder being another entity. I am a small minority shareholder of Alexander

1  Marine Co., Ltd. and own about 6-7 percent of the stock. I am not an employee of
2  Alexander Marine Co., Ltd.
3      8. The United States dealers for Alexander Marine Co., Ltd. act as conduits for
4  the manufacturer with customers in the United States who have warranty claims.
5  As a result, a boat owner will present their warranty claim to the U.S. entity from
6  whom they bought the yacht. Alexander Marine is immediately notified of any
7  claim and it unilaterally notifies the U.S. dealer if the claim is covered by the
8  warranty. If there is a covered claim, then the U.S. obtains pricing for repairs and if
9  the manufacturer agrees, then the repair is made. In the event that the dealer
10 advances the costs of the repair, then the manufacturer reimburses the dealer for
11 those warranty repairs. This system is designed to provide the customer with the
12 fastest and easiest method for having repairs made.
13     I declare, under penalty of perjury under the laws of the State of California
14 that the foregoing is true and correct.
15     Executed on this 6th day of May 2014.

                                                 2014.05.06
                                                 03:13:57
                        Johnny Chueh            +08'00'

## DECLARATION OF HSIUNG WEI TSENG

1. I am the President of Defendant, Alexander Marine Co., Ltd. ("Alexander Marine").

2. I have personal knowledge of the facts contained herein and if called as a witness, I could and would testify competently thereto.

3. I have worked for Alexander Marine for over 10 years. I became its President in late June 2013.

4. Alexander Marine is a corporation based in Taiwan. It has been building yachts known under the name Ocean Alexander since 1978. We build yachts from 72 feet to 155 feet in length.

5. Alexander Marine has no offices in the United States and to the best of my knowledge, has never had any.

6. Alexander Marine sells its yachts to dealers in various parts of the world. Alexander Marine does not own any of its dealers. It enters into agreements with its dealers that permit them to sell the new Ocean Alexander yachts in specified territories.

7. Alexander Marine Co., Ltd. does not have any ownership interest an entity known as Ocean Alexander Marine Yachts Sales, Inc. or any other company in the United States.

8. Alexander Marine sold over six yachts last year, is profitable and timely pays its bills.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30 day of April 2014.

_____
Hsiung Wei Tseng

DEFENDANTS' MSJ     -11-     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Case 8:12-cv-01994-DOC-JCG   Document 27   Filed 05/05/14   Page 12 of 14   Page ID #:183

**EXHIBIT 1**

# STATE of WASHINGTON



## SECRETARY of STATE

I, RALPH MUNRO, Secretary of State of the State of Washington and custodian of its seal, hereby issue this

## CERTIFICATE OF INCORPORATION

to

OCEAN ALEXANDER MARINE YACHT SALES, INC.

a Washington Profit corporation. Articles of Incorporation were filed for record in this office on the date indicated below.

UBI Number: 601 977 787

Date: September 01, 1999



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital



Ralph Munro, Secretary of State 2-901659-9

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 115 Pine Avenue, Suite 320, Long Beach, California 90802.

On May 5, 2014, I served the document described as **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; DECLARATIONS OF JOHNNY CHUEH AND HSIUNG WEI TSENG IN SUPPORT THEREOF** on all interested parties in this action

[X] by placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

Theodore H. Adkinson
Roberts & Kehagiaras
1 World Trade Center, Suite 2350
Long Beach, CA 90831

[ ] BY MAIL

[ ] As follows: I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (FEDERAL) I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: May 5, 2014                                          _R Ward_