**ROBERTS & KEHAGIARAS LLP**
CAMERON W. ROBERTS, ESQ. (State Bar No. 176682)
cwr@tradeandcargo.com
THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
tha@tradeandcargo.com
1 World Trade Center, Suite 2350
Long Beach, CA 90831
Telephone: (310) 642-9800
Facsimile: (310) 868-2923

Attorneys for plaintiffs
DAVID PARKER and BIG BIRD HOLDINGS, LLC

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA — SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC, | ) **Case No. SACV12-1994 DOC(ANx)** |
| | ) |
| Plaintiffs, | ) **OPPOSITION OF PLAINTIFFS DAVID PARKER AND BIG BIRD HOLDINGS, LLC TO DEFENDANT OCEAN ALEXANDER MARINE YACHT SALES, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) |
| ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC.,OCEAN ALEXANDER SERVICES, L.L.C., and OCEAN ALEXANDER MARINE YACHT SALES, INC. | ) Date: June 2, 2014 |
| | ) Time: 8:30 a.m. |
| | ) Courtroom:  9D |
| Defendant. | ) Judge:  Hon. David O. Carter |
| | ) Complaint Filed:  Nov. 14, 2012 |

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . 1

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . 1

III. ANALYSIS . . . . . . . . . . . . . . . . . . . . 2

     A.   Failure to Meet and Confer  . . . . . . . . 2

     B.   Ocean Alexander's Motion Fails to
          Address the Central Allegations Against It . . . . 2

          1. Ocean Alexander's Adoption Liability. . . . . . 3

          2. Ocean Alexander's Distributor Liability . . . . 8

          3. Ocean Alexander's Manufacturer Liability. . . . 9

     C.   There is a Triable Question of Fact
          As to Alter Ego Status . . . . . . . . . . 10

     D.   Plaintiffs Request Additional Time to
          Perform Discovery on Newly Appearing
          Defendant, Alexander Marine. . . . . . . . . . 12

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . 12

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

Z:\Parker v. Alexandar Marine\OAMYS MSJ – OPPO.doc.docx

POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## Cases

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*   . . . . . . 10, 11

     210 F.3d 1099 (2000 9th Cir.)

## Statutes

California Civil Code Section 1791. . . . . . . . . . . . . 8

California Civil Code Section 1792.1 . . . . . . . . . . . 7

California Civil Code Section 1792.2 . . . . . . . . . . . 8

Federal Rules of Civil Procedure 56(c) . . . . . . . . 10, 11

Federal Rules of Civil Procedure 56(d) . . . . . . . . . 1, 12

Local Rule 7-3 . . . . . . . . . . . . . . . . . . . . . 2

16 CFR Section 700.4 . . . . . . . . . . . . . . . . . . 8

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

Z:\Parker v. Alexandar Marine\OAMYS MSJ – OPPO.doc.docx

POINTS AND AUTHORITIES

I.   **INTRODUCTION**

Defendant Ocean Alexander Marine Yacht Sales, Inc.'s ("Ocean Alexander") motion for summary judgment fails on multiple levels.

As a preliminary matter, Ocean Alexander's motion for summary judgment fails to satisfy local rules requiring parties to engage in thorough meet and confer efforts prior to filing any such motions.

More substantively, Ocean Alexander's motion for summary judgment fails to address analyze any of the elements of any of the five causes of action against it, including the central allegation against it – that it has direct liability for the warranty obligations at issue in this case.

Additionally, Ocean Alexander has failed to put forward sufficient admissible evidence to carry its burden of establishing that there is no triable issue of fact as to whether defendants are alter egos of each other.

Finally, in that defendant Alexander Marine is a foreign entity that has not answered the complaint as of the filing of this opposition, plaintiffs have been unable to obtain documents or discovery from this entity with respect to these issues, and therefore plaintiffs request additional time under FRCP 56(d) to conduct such discovery.

II.  **FACTS**

Plaintiffs David Parker and Big Bird Holdings, LLC ("plaintiffs") have brought this suit alleging five causes of action arising out of defendants' breach of warranty

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

obligations.   Defendant Alexander Marine Co. Ltd. ("Alexander Marine") is the foreign manufacturer of the yacht.   Defendant Ocean Alexander is the manufacturer's U.S. representative, which imported that yacht and was responsible for warranty repairs.

Ocean Alexander has admitted that it imported the yacht and undertook the dealer's warranty obligations upon the termination of the dealership that sold the yacht to plaintiffs, Orange Coast Yachts, Inc. ("Orange Coast"), and therefore Ocean Alexander has multiple statutory and common law warranty obligations.

## III. ANALYSIS

### A.   Failure to Meet and Confer

Local Rule 7-3 requires counsel for parties to meet and confer to "thoroughly discuss" issues to be addressed in motions ten days prior to the filing of any such motion.   Here, there was one short telephone discussion five days prior to the filing.   During that call, Ocean Alexander's counsel promised to follow-up with a letter detailing its position, but no such letter was sent.   See Declaration of Theodore H. Adkinson, ¶¶ 5-6.

### B.   Ocean Alexander's Motion Fails to Address the Central Allegation Against it

Ocean Alexander's motion for summary judgment is based entirely upon attempting to disprove alter ego allegations. The motion does not in any way address Ocean Alexander's direct

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

2

liability, and it puts forward no evidence or argument establishing that it could have no such direct liability. This direct liability stems from Ocean Alexander's adoption of the manufacturer's warranty obligations, from its role as a distributor of the yacht, and from its role in the manufacture of the yacht.

**1.    Ocean Alexander's Adoption Liability**

In plaintiffs' complaint, plaintiffs have alleged as follows:

> Defendant AM assigned responsibility for the handling of AM's written warranties for the Jelly Bean2 to defendants OAMS, OAMC and OAYS, and defendants OAMS, OAMC and OAYS adopted and assumed those written warranties. (Plaintiffs' complaint, ECF Doc. # 1, p. 5, ¶ 18.)

Defendant's motion for summary judgment does not cite any authority or put forward any argument as to how this impacts Ocean Alexander's liability to plaintiffs. Ocean Alexander's motion instead focuses solely on alter ego allegations.

The yacht at issue in this litigation was sold to plaintiffs by a dealer, Orange Coast Yachts, whose relationship with defendant Alexander Marine was subsequently terminated. Upon termination, Alexander Marine assigned all of Orange Coast's warranty obligations to Ocean Alexander. Ocean Alexander then adopted Alexander Marine's warranty

1   responsibilities by actively evaluating and denying warranty

2   claims.

3       With respect to the assignment of warranty

4   responsibilities, the evidence shows that Alexander Marine

5   designated Ocean Alexander to handle all warranty claims as

6   detailed in an e-mail sent to Orange Coast Yachts:

7       THIS NOTICE is to formally advise you that as our

8       discussions on the subject of your sales

9       representation has not resulted in the needed changes

10      we desired, we are terminating your relationship with

11      us as an independent sales agent. This termination is

12      effective Oct 9, 2009. [¶]... **Please direct all**

13      **warranty items to tim@oceanalexander.com where**

14      **Alexander Marine will be involved directly with the**

15      **customer.** (Exhibit A to Declaration of James McLaren

16      (Emphasis added).)

17

18      Ocean Alexander employee Ray Prokorym testified that

19  tim@oceanalexander.com was the e-mail address of Ocean

20  Alexander employee Tim Curry, (Exhibit B to Adkinson

21  Declaration, Prokorym Deposition, p. 49:22-50:1) and Tim Curry

22  confirmed in his deposition that he was responsible for

23  handling warranty claims on all Ocean Alexander yachts on the

24  West Coast, including yachts sold by Orange Coast Yachts prior

25  to the termination of its sales relationship with Alexander

26  Marine. (Exhibit A to Adkinson Decl., Curry Deposition, pp.

27  11:2-18.)

28

4

PLAINTIFFS' OPPOSITION TO OCEAN
ALEXANDER'S MSJ

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

Subsequent to that termination e-mail, Ocean Alexander, having adopted all warranty responsibilities, evaluated and rejected the warranty claims presented by plaintiffs. Specifically, the owner and director of Ocean Alexander sent e-mails to plaintiff David Parker specifying that Ocean Alexander disagreed with the repairs being made to the vessel and refused to honor plaintiffs' claims. For example, Mr. Cheuh sent an e-mail on behalf of Ocean Alexander with the following denial:

Dear Dave and Al,

Thank you for providing the information in the past 2 weeks. After reviewing the below are our findings:

1. "Extended Keel is non structural" – ... the extended keel, by design, is NOT to take the entire force of any impact/grounding and potential render the original keel and hull compromised. **Thus, it is Ocean Alexander's professional opinion TO DISAGREE that the current repair methods advocated by Gambol. That is OA disagrees with reinforcement to make the extended keel structural. We believe this take on additional risk to the boat, in case of a collision may compromise the hull/original keel.**

2. ... **Thus it is in Ocean Alexander's professional opinion** that the FIBERGLASS WAS SUFFICIENT IN THICKNESS prior to impact and the only reason the measurements are 1/2" is due to the areas had delaminated due to impact.

5

PLAINTIFFS' OPPOSITION TO OCEAN ALEXANDER'S MSJ

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

3. "Keel Extension poorly attached". **Ocean Alexander DENIES this charge** as the boat has been in the water for well over 5 years. ...

4. ... **OA disagrees** with the repair method and cannot participate in providing resources, parts/material when we do not believe in the inherent soundness of the solution being undertaken. ...

I wish I could have had better news. ... the repair already undertaken and being suggested is to undertake a route that **we at OA CANNOT agree with nor sign off on**. ...

Johnny

(Declaration David Parker, Exhibit A)


When asked about this e-mail at deposition, Ocean Alexander's employee in charge of warranty claims, Tim Curry, testified that Johnny Cheuh has the authority to sign off on warranty repairs:

Q. ... Have you ever seen Johnny Cheuh weigh in on a warranty claim in such a manner?

Mr. WISHKO: Object to the form.

A. I've had discussions with Johnny as far as the validity of warranty.

Q. ...And as far as you know, Johnny works for Ocean Alexander, correct, has some role at Ocean Alexander?

A. Yes.

Q. Do you know whether he's authorized to speak on behalf of Ocean Alexander?

1    A.    I would assume.

2    Q.    What's that assumption based on?

3    A.    As far as I know, he is the person that I would

4    ask for authorization on that kind of...

5    Q.    Kind of?

6    A.    Oh, sorry.  On warranty.

7    (Exhibit A to Adkinson Decl., Curry Depo., p. 68:9-25)

8    These statements demonstrate that Ocean Alexander was more

9    than a conduit for warranty claims as argued in Mr. Cheuh's

10    declaration.  By evaluating and rejecting warranty claims in

11    its own name, Ocean Alexander adopted the warranty

12    responsibilities of Alexander Marine.

13    In fact, under California law, this written documentation

14    of Ocean Alexander's active undertaking constitutes an express

15    warranty.  Under Calif. Civil Code § 1792.1, an express

16    warranty is defined as follows:

17    (a) "Express warranty" means:

18    (1) **A written statement arising out of a sale to the**

19    **consumer of a consumer good pursuant to which the**

20    **manufacturer, distributor, or retailer undertakes to**

21    **preserve or maintain the utility or performance of the**

22    **consumer good** or provide compensation if there is a

23    failure in utility or performance; (Emphasis added.)

24    Here, Ocean Alexander is a distributor (as demonstrated

25    below) that made written statements in its e-mails regarding

26    its undertaking as to the maintenance on the boat.

27    Ocean Alexander's adoption of warranty obligations under

28    California State law is also sufficient to bind Ocean Alexander

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

7

1   under federal warranty law. (*See* 16 CFR § 700.4: "...If under

2   State law the supplier is deemed to have 'adopted' the written

3   affirmation of fact, promise, or undertaking, the supplier is

4   also obligated under the [Magnuson-Moss Warranty] Act.")

5

6   **2.   Ocean Alexander's Distributor Liability**

7      Furthermore, even if a trier of fact concluded that Ocean

8   Alexander did not adopt Alexander Marine's warranty

9   obligations, Ocean Alexander still has independent warranty

10   obligations that arise under California law based upon its role

11   as a distributor. Calif. Civil Code § 1792.2(a) specifies as

12   follows with respect to warranties of fitness for a particular

13   purpose:

14       Every sale of consumer goods that are sold at retail

15       in this state by a retailer **or distributor** who has

16       reason to know at the time of the retail sale that the

17       goods are required for a particular purpose, and that

18       the buyer is relying on the retailer's or

19       distributor's skill or judgment to select or furnish

20       suitable goods **shall be accompanied by such retailer's**

21       **or distributor's implied warranty that the goods are**

22       **fit for that purpose.** (Emphasis added)

23      Here, Ocean Alexander was a distributor as a result of its

24   importation of the boat for sale (*see* Plaintiff's complaint, ¶

25   12 and Ocean Alexander's answer, ¶ 12), thus standing between

26   the manufacturer and the retail seller. (See Calif. Civil Code

27   § 1791(e): "'Distributor' means any ... corporation ... that

28

Z:\Parker v. Alexandar Marine\OAMYS MSJ - OPPO.doc.docx

PLAINTIFFS' OPPOSITION TO OCEAN
ALEXANDER'S MSJ

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

1   stands between the manufacturer and the retail seller in

2   purchases ... or contracts for sale of consumer goods.")

3       Ocean Alexander also knew the yacht would be used for

4   ocean travel (See Curry deposition, p. 61:21-25), and therefore

5   under California law, the yacht came with Ocean Alexander's

6   implied warranty that the yacht would be fit for that

7   particular purpose.

8

9   **3.   Ocean Alexander's Manufacturer Liability**

10      Additionally, there is evidence to support a finding that

11  Ocean Alexander played a role in the manufacturing and design

12  of the yacht, thus making Ocean Alexander a manufacturer under

13  the law for the purposes of warranty obligations.  In an e-mail

14  from Ocean Alexander's owner, Johnny Cheuh, he acknowledges

15  that Ocean Alexander was engaged in the design and construction

16  of the yacht at issue in this litigation.  In that e-mail he

17  states as follows:

18      ...As I have mentioned before, the original keel is

19          structural and the extension piece was designed, and

20          lasted 5years+, w/o being structural.  **This was a**

21          **deliberate decision by Ocean Alexander** to ensure in a

22          collision it would reduce the risk of structural

23          failure. ... [¶] ...However, **I simply do not see where**

24          **Ocean Alexander is responsible here.  We built a boat**

25          **with an original structural keel and nonstructural**

26          **extended keel, that lasted 5 years w/o issue.  ...**

27          (Exhibit B to Declaration of David Parker (Emphasis

28          added).)

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

Ocean Alexander's motion has entirely failed to address, let alone demonstrate that there is not a triable issue as to its direct liability under all of these theories, thus failing to meet its burden of production under FRCP 56(c)(1)(A).  For instance, in *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000), the court held as follows with respect to a moving party's burden of production:

> A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. ... **If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial**. (Emphasis added.)

In that Ocean Alexander has failed to meet its burden of production in establishing that plaintiffs could not establish liability against it, Plaintiffs have no obligation to produce any evidence in opposition to Ocean Alexander's motion.

C.   <u>There is a Triable Question of Fact as to Alter Ego Status</u>

In Mr. Cheuh's inadmissible declaration, he claims to not be employed by Alexander Marine.  This is directly contracted by Mr. Cheuh's prior e-mail to Orange Coast Yachts in which he terminated Orange Coast's dealership status on behalf of Alexander Marine as Alexander Marine's "President."  (See Exhibit A to Declaration of James McLaren.)

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

1    Mr. Cheuh's inadmissible declaration also states that he
2    does not have a controlling interest in Alexander Marine, yet
3    that declaration fails to identify the entity that does
4    purportedly hold the controlling interest in Alexander Marine,
5    and the declaration fails to address whether Mr. Cheuh has any
6    ownership in and/or control over that unidentified entity. Mr.
7    Cheuh's carefully worded declaration therefore leaves open the
8    possibility that he has complete albeit indirect control over
9    Alexander Marine through the unnamed entity. Consequently,
10   Ocean Alexander's evidence submitted in support of its motion
11   fails to satisfy its burden under FRCP 56(c). For example, in
12   *Nissan Fire & Marine, supra*, 210 F.3d at 1106-07, the court of
13   appeal concluded the since the moving party's proffered
14   declaration failed to refute the possibility that notice was
15   sent timely even if not received timely, the motion should have
16   been denied: "at summary judgment, a nonmoving party plaintiff
17   has no obligation to produce anything until the moving party
18   defendant has carried its initial burden of production. Because
19   the O'Brien affidavit did not carry Fritz's initial burden of
20   production, Hitachi and Nissan had no obligation to provide
21   evidence in response."

22   Here, in that the declarations submitted by defendants
23   fail to properly refute the possibility of Mr. Cheuh's complete
24   control of both entities, Ocean Alexander's motion has not
25   satisfied its burden of production.

26   Further, as discussed above with respect to Mr. Cheuh's
27   December 14, 2011, e-mail, either Ocean Alexander was involved
28   in the design and construction of the yacht at issue in this

1    litigation, or there is such a "unity of interest and
2    ownership" between these two companies in the mind of their
3    common owner, Johnny Cheuh, that he fails to differentiate
4    between the two entities when he is doing business on their
5    behalf.  This e-mail therefore creates a triable issue of fact
6    regarding the alter ego status of the defendants.

7

8    D.   Plaintiffs Request Additional Time to Perform Discovery on
9    Newly Appearing Defendant, Alexander Marine.

10        Based upon all of the grounds discussed above, Ocean
11   Alexander's motion should be denied.  However, to the extent
12   this Court is at all inclined to favorably view Ocean
13   Alexander's motion at this time, plaintiffs request that they
14   be given additional time pursuant to FRCP 56(d) to perform
15   discovery as to the newly appearing defendant, Alexander
16   Marine.  This discovery would be to elicit further evidence on
17   the extent of Alexander Marine's assignment and Ocean
18   Alexander's adoption of warranty responsibilities, as well as
19   the extent the common control and ownership between Alexander
20   Marine, Ocean Alexander and their common owner, Johnny Cheuh.

21

22   **IV.   CONCLUSION**

23        Ocean Alexander's motion for summary judgment fails on
24   every level.  It was filed without sufficient meet and confer
25   efforts, it fails to demonstrate that there is no triable issue
26   of fact as to the moving party's direct liability under the
27   various warranties, and it fails to demonstrate that there is
28   no triable issue of fact raised by plaintiff's allegations of

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

alter ego liability.  Finally, if this Court is at all inclined to favorably view Ocean Alexander's motion, plaintiffs request additional time to elicit further evidence from Alexander Marine, which has only recently been ordered to appear in this action.

Dated: May 12, 2014          **ROBERTS & KEHAGIARAS LLP**

                        By:  /s/ Theodore H. Adkinson
                             Theodore H. Adkinson
                             Attorneys for plaintiffs
                             David Parker and Big Bird
                             Holdings, LLC

PLAINTIFFS' OPPOSITION TO OCEAN
                                                        ALEXANDER'S MSJ