**ROBERTS & KEHAGIARAS LLP**
CAMERON W. ROBERTS, ESQ. (State Bar No. 176682)
cwr@tradeandcargo.com
THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
tha@tradeandcargo.com
1 World Trade Center, Suite 2350
Long Beach, CA 90831
Telephone: (310) 642-9800
Facsimile: (310) 868-2923

Attorneys for plaintiffs
DAVID PARKER and BIG BIRD HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC., OCEAN ALEXANDER SERVICES, L.L.C., and OCEAN ALEXANDER MARINE YACHT SALES, INC.<br><br>Defendant. | **Case No. SACV12-1994 DOC(ANx)**<br><br>**DECLARATION OF THEODORE H. ADKINSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  June 2, 2014<br>Time:  8:30 a.m.<br>Courtroom: 9D<br>Judge:  Hon. David O. Carter<br><br>Date Filed: November 14, 2012 |

I, Theodore H. Adkinson, declare:

1.   I am an attorney with Roberts & Kehagiaras, LLP, attorneys for plaintiffs David Parker and Big Bird Holdings, LLC.  I have personal knowledge of the facts contained herein and if called as a witness could testify competently thereto.

2.   On November 15, 2013, I took the depositions of Ocean Alexander Marine Yacht Sales employees Tim Curry and Ray Prokorym.

1

3. Attached to this declaration as Exhibit A is a true and correct copy of the applicable excerpts of the deposition transcript of Tim Curry.

4. Attached to this declaration as Exhibit A is a true and correct copy of the applicable excerpts of the deposition transcript of Ray Prokorym.

5. On April 30, 2014, I had a short telephone conversation with defendants' counsel, Ronald Rosenberg, in which he for the first time raised the issue of filing a motion for summary judgment as to the U.S. defendants. During that call, I agreed to dismiss two U.S. defendants since discovery had indicated they had no apparent direct connection to the facts alleged in this lawsuit. However, I disputed his claim that Ocean Alexander Marine Yacht Sales, Inc. ("Ocean Alexander") had no liability based upon its warranty obligations.

6. During that April 30, 2014, call I asked Mr. Rosenberg to provide me with a letter or other written explanation detailing his position with respect to Ocean Alexander's lack of liability, and he agreed to do so. Since that call, we did not discuss the motion again, and I have never received that written explanation prior to the service of Ocean Alexander's motion.

7. In that defendant Alexander Marine Co. Ltd. ("Alexander Marine") has not answered the complaint as of the filing of this opposition, plaintiffs have been unable to obtain documents or discovery from this entity, and I therefore request additional time to conduct such discovery.

8. This requested discovery would allow plaintiffs to elicit further evidence as to the extent of Alexander Marine's assignment of warranty obligations and Ocean Alexander's adoption of the obligations, as well as the extent of the common control and ownership between Ocean Alexander and Alexander Marine.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 12, 2014                    /s/ Theodore H. Adkinson
                                       Theodore H. Adkinson

Z:\Parker v. Alexandar Marine\OAMYS MSJ – OPPO – Decl of THA.doc

ADKINSON DECLARATION IN SUPPORT OF OPPOSITION TO OCEAN ALEXANDER'S MSJ

**EXHIBIT "A"**

1077253

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

---

DAVID PARKER and BIG BIRD )
HOLDINGS, LLC, )
                                 )
       Plaintiffs,    )
                                 ) SACV12-1994
   vs.                    ) DOC (ANx)
                                 )
ALEXANDER MARINE CO., LTD, )
OCEAN ALEXANDER MARINE CENTER, )
INC., OCEAN ALEXANDER )
SERVICES, L.L.C., and OCEAN )
ALEXANDER MARINE YACHT SALES, )
INC. )
                                 )
       Defendants.    )

---

DEPOSITION UPON ORAL EXAMINATION OF

TIM CURRY

---

12:44 P.M.

NOVEMBER 15, 2013

1301 FIFTH AVENUE, SUITE 3300

SEATTLE, WASHINGTON

REPORTED BY: CARLA R. WALLAT, CCR 2578



Kusar® Court Reporters & Legal Services, Inc.
California • National • Global
800.282.3376 kusar.com calendar@kusar.com

```
 1              SEATTLE, WASHINGTON; NOVEMBER 15, 2013

 2                          12:44 P.M.

 3                           --oOo--

 4

 5                          TIM CURRY,

 6     sworn as a witness by the Certified Court Reporter,

 7                     testified as follows:

 8

 9                          EXAMINATION

10   BY MR. ADKINSON:

11       Q.  Would you state and spell your name for the

12   record, please.

13       A.  Tim Curry, T-I-M, C-U-R-R-Y.

14       Q.  Mr. Curry, do you currently work for Ocean

15   Alexander Marine Yacht Sales?

16       A.  I do.

17       Q.  What is your job title?

18       A.  Service operations manager.

19       Q.  Okay.  And when did you start working?

20       A.  2008, May.

21       Q.  Okay.  And were you working for Ocean

22   Alexander Marine Yacht Sales before that in a different

23   capacity?

24       A.  No.

25       Q.  Okay.  And for the record, to simplify
```

```
 1   matters, I will refer to Ocean Alexander Marine Yacht
 2   Sales as Ocean Alexander and so when I say Ocean
 3   Alexander in the future, you'll understand that to mean
 4   Ocean Alexander Marine Yacht Sales?
 5        A.   Okay.
 6        Q.   Okay?  Great.
 7             Where did you work prior to Ocean Alexander?
 8        A.   Kohorie Construction.
 9        Q.   And is that in the Seattle area?
10        A.   Yes.
11        Q.   And what was your title there?
12        A.   Superintendent.
13        Q.   And what type of work were you doing there?
14        A.   Multiple family dwellings.
15        Q.   And what years were you there?
16        A.   2006 to 2008.
17        Q.   Okay.  And prior to 2006?
18        A.   Canal Boatyard.
19        Q.   And where is that located?
20        A.   Ballard.
21        Q.   Ballard?
22        A.   (Nodding.)
23        Q.   And what was your position there?
24        A.   General manager.
25        Q.   And how long were you there?
```

```
 1   with.
 2         Q.   Okay.  Now, do you get any claims that come in
 3   for any Ocean Alexander that's sold in the United
 4   States?
 5         A.   I deal with just West Coast.  West Coast,
 6   Mexico to Canada.
 7         Q.   So if something's sold in Newport, they're
 8   still dealing with you?
 9         A.   Yes.
10         Q.   And this is true even if it was sold by Orange
11   Coast Yachts which no longer is an Ocean Alexander
12   dealer, correct?
13         A.   Orange Coast Yachts would have taken care of
14   their own warranty when they were a dealer.
15         Q.   When they were a dealer.  And then after the
16   termination of the dealership?
17         A.   I would facilitate any questions that an owner
18   may have.
19         Q.   Okay.  Do you know when they were terminated
20   as a dealer?
21         A.   I couldn't give you a specific date, but I
22   would say maybe two or three years ago.
23         Q.   And do you know why they were terminated?
24         A.   I do not.
25         Q.   In terms of claims handling, does it matter to
```

```
 1      A.   That it would be a warranty claim, possible.
 2      Q.   Can you think of any reason it wouldn't be
 3   covered?
 4      A.   It depends upon the cause.
 5      Q.   Covered the cause, cause is that they failed
 6   to cure it in the first instance when they lit the
 7   hull?
 8      A.   Then it would be up to the factory to
 9   determine whether that was under warranty or not.
10      Q.   But you have no opinion as to whether or not
11   that would be covered?
12      A.   No.  I don't determine coverage.
13      Q.   I understand.  I'm talking about your personal
14   opinion.
15      A.   Uh-huh.
16      Q.   Would you think that is something that should
17   be covered?
18      A.   Depends upon what caused it.
19           MR. WISHKO:  All right, that's round
20   three of the same line.  So let's move on, please.
21      Q.   (BY MR. ADKINSON)  Would the Ocean Alexander
22   98 be something to be expected to travel on the ocean?
23      A.   Yes.
24      Q.   Something you'd expect to be seaworthy?
25      A.   Yes.
```

```
 1    David Parker and Johnny Cheuh?
 2         A.   I have seen none.
 3         Q.   I will show you what we'll mark as Exhibit 11.
 4                   (Deposition Exhibit 11 was marked for
 5                    identification.)
 6         Q.   (BY MR. ADKINSON)   I take it you've never seen
 7    this document?
 8         A.   No.
 9         Q.   Okay.  Have you met Johnny Cheuh?
10         A.   Yes.
11         Q.   What is his role at Ocean Alexander?
12         A.   Ocean Alexander Marine Yacht Sales?
13         Q.   Yes.
14         A.   I think he may be an owner.
15         Q.   Does he have any other titles there?
16         A.   I don't know the title that he has.
17         Q.   Who's the president of Ocean Alexander Marine
18    Yacht Sales?
19         A.   I have never seen a title for anybody.  He is
20    one of the owners as far as I know.
21         Q.   Do you know what role he has at Alexander
22    Marine?
23         A.   I don't know.
24         Q.   I'm going to direct you to what's the second
25    page -- third page of that document which is Bates
```

```
 1   stamped marked Parker 000240 at the bottom.
 2        A.   Yes.
 3        Q.   Do you see that?  On -- and I'll report to you
 4   or indicate to you that this is an email from Johnny
 5   Cheuh to Dave Parker, my clients, regarding the JELLY
 6   BEAN which is the boat at issue in this litigation.
 7             Under the third paragraph of that, he
 8   indicates -- he says as follows:  It was indicated in
 9   Tim Nolan report dated December 7 and Jeffrey Mallian
10   December 1 report that, 1, extended keel is
11   nonstructural, unquote.  This was by design as the
12   extended keel is designed to break away upon impact.
13   This -- thus the extended keel by design is not to make
14   the entire -- take the entire force of any
15   impact/grounding.
16             Have you ever heard of a design of a boat like
17   that?
18        A.   Specifically, no.
19        Q.   Have you ever heard of that -- do you know if
20   that's the case with any Ocean Alexander Yachts that
21   you've dealt with?
22        A.   I'm not aware of it.  I'm not involved in the
23   design of boats.
24        Q.   The second paragraph of that, Subsection 3,
25   Certain areas of the hull near keel seem thin, around
```

```
 1  half-inch of fiberglass, end quote.  After studying the
 2  areas in question, relied on secondary bonding to
 3  provide the thickness for structural integrity.  The
 4  fact that a collision/strap damage had occurred and
 5  delamination of the structural bulkhead was witnessed,
 6  evidenced this fact.  Thus, it is Ocean Alexander's
 7  professional opinion that the fiberglass was sufficient
 8  in thickness prior to impact and the only reason the
 9  measurements are one-half inch is due to the area had
10  delaminated due to impact.
11          Does a half-inch hull near the keel on a
12  100-foot yacht sound adequate to you?
13       A.  I couldn't say whether half-inch is adequate
14  or not.  Boats are built of all different thicknesses
15  and thickness by itself does not in my opinion denote
16  strength.
17       Q.  Okay.  Are you familiar ever with collision
18  damage causing delamination of the structural bulkhead?
19       A.  Delamination of the bulkhead to the hull?
20       Q.  Yes.
21       A.  I know of one 48-foot boat that had a
22  collision.
23       Q.  And it had -- resulting in delamination?
24       A.  Not complete, but some of the collision
25  bulkhead.
```

| | |
|---|---|
| 1 | Q. In the first paragraph, Subsection 3, it says, |
| 2 | Thus it is Ocean Alexander's professional opinion to |
| 3 | disagree that the current repair methods advocated by |
| 4 | Gambol. That is, Ocean Alexander or OA, disagrees with |
| 5 | reinforcement to make the extended keel structural. We |
| 6 | believe this take on additional risk to the boat in |
| 7 | case of a collision may compromise the hull/original |
| 8 | keel. |
| 9 | Have you ever seen Johnny Cheuh weigh in on a |
| 10 | warranty claim in this manner? |
| 11 | MR. WISHKO: Object to the form. |
| 12 | A. I've had discussions with Johnny as far as the |
| 13 | validity of warranty. |
| 14 | Q. (BY MR. ADKINSON) And as far as you know, |
| 15 | Johnny works for Ocean Alexander, correct, has some |
| 16 | role at Ocean Alexander? |
| 17 | A. Yes. |
| 18 | Q. Do you know whether he's authorized to speak |
| 19 | on behalf of Ocean Alexander? |
| 20 | A. I would assume. |
| 21 | Q. What's that assumption based on? |
| 22 | A. As far as I know, he is the person that I |
| 23 | would ask for authorization on that kind of... |
| 24 | Q. Kind of? |
| 25 | A. Oh, sorry. On warranty. |

```
 1                    REPORTER'S CERTIFICATE

 2

 3        I, CARLA R. WALLAT, the undersigned Certified Court

 4   Reporter pursuant to RCW 5.28.010 authorized to administer

 5   oaths and affirmations in and for the State of Washington, do

 6   hereby certify that the sworn testimony and/or proceedings, a

 7   transcript of which is attached, was given before me at the

 8   time and place stated therein; that any and/or all witness(es)

 9   were duly sworn to testify to the truth; that the sworn

10   testimony and/or proceedings were by me stenographically

11   recorded and transcribed under my supervision, to the best of

12   my ability; that the foregoing transcript contains a full,

13   true, and accurate record of all the sworn testimony and/or

14   proceedings given and occurring at the time and place stated

15   in the transcript; that a review of which was requested; that

16   I am in no way related to any party to the matter, nor to any

17   counsel, nor do I have any financial interest in the event of

18   the cause.

19        WITNESS MY HAND AND DIGITAL SIGNATURE this 27th day of

20   November, 2013.

21

22

23   _____

24   CARLA R. WALLAT
     Washington State Certified Court Reporter, #2578
25   cwallat@yomreporting.com
```



Kusar   Keeping Your Word Is Our Business

**EXHIBIT "B"**

1077458                                                          CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

---

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) SACV12-1994 ) DOC (ANx) ) |
| ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC., OCEAN ALEXANDER SERVICES, L.L.C., and OCEAN ALEXANDER MARINE YACHT SALES, INC. | ) ) ) ) ) ) |
| Defendants. | ) ) |

---

DEPOSITION UPON ORAL EXAMINATION OF

PERSON MOST KNOWLEDGEABLE OF

ALEXANDER MARINE CO.

RAY PROKORYM

---

9:54 A.M.
NOVEMBER 15, 2013

1301 FIFTH AVENUE, SUITE 3300

SEATTLE, WASHINGTON

REPORTED BY: CARLA R. WALLAT, CCR 2578



Kusar®
Court Reporters &
Legal Services, Inc.
California • National • Global
800.282.3376  kusar.com  calendar@kusar.com

```
 1      A.  No.
 2      Q.  On the first line of this email --
 3          MR. ADKINSON:  And I'll put on the
 4  record, this is a email from Johnnycheuh@hotmail.com to
 5  Jimmclaren@sbcglobal.net dated October 8, 2009, 8:53
 6  p.m., and titled Termination Notice.
 7      Q.  (BY MR. ADKINSON) The first paragraph or
 8  sentence on this reads, This notice is to formally
 9  advise you that our discussions -- as our discussions
10  on the subject of your sales representation has not
11  resulted in the needed changes we desired, we are
12  terminating your relationship with us as an independent
13  sales agent.  This termination is effective October 9,
14  2009.
15          Do you know what he is referring to with
16  respect to changes needed?
17      A.  Changes desired, no.
18      Q.  Okay.  On the fourth, let's see, I guess it'd
19  be fourth paragraph, Please direct all warranty items
20  to Tim@oceanalexander.com where Alexander Marine will
21  be involved directly with the customer.
22          Do you recognize the email
23  Tim@oceanalexander.com?
24      A.  Yes.
25      Q.  And who is that email --
```

```
 1        A.   Tim Curry.
 2        Q.   And do you know what he means by where
 3   Alexander Marine will be involved directly with the
 4   customer?
 5             MR. WISHKO:   Object to the form.   You
 6   can answer if you --
 7        A.   I can only assume it's just like the receiver,
 8   Alexander Marine has to be involved with any warranty
 9   claims.   And Tim Curry is now the facilitator; just
10   like he is currently, he'll be the facilitator for the
11   leftover customers, if you will, to get the information
12   to Alexander Marine which in effect is as it happens.
13        Q.   (BY MR. ADKINSON)   Okay.   And so, at least as
14   you read that, it would be that Ocean Alexander is
15   taking over the responsibility from Orange Coast Yachts
16   regarding the handling of claims, correct?
17        A.   The communication of the warranty claims, not
18   responsibility.
19        Q.   Well, responsibility for communications?
20        A.   Responsibility for communications.
21             MR. WISHKO:   We've gone about an hour.
22   Let's take a little break.
23             MR. ADKINSON:   Sure.
24             (Recess taken.)
25             MR. ADKINSON:   Back on the record.
```

```
 1                    REPORTER'S CERTIFICATE
 2
 3       I, CARLA R. WALLAT, the undersigned Certified Court
 4  Reporter pursuant to RCW 5.28.010 authorized to administer
 5  oaths and affirmations in and for the State of Washington, do
 6  hereby certify that the sworn testimony and/or proceedings, a
 7  transcript of which is attached, was given before me at the
 8  time and place stated therein; that any and/or all witness(es)
 9  were duly sworn to testify to the truth; that the sworn
10  testimony and/or proceedings were by me stenographically
11  recorded and transcribed under my supervision, to the best of
12  my ability; that the foregoing transcript contains a full,
13  true, and accurate record of all the sworn testimony and/or
14  proceedings given and occurring at the time and place stated
15  in the transcript; that a review of which was requested; that
16  I am in no way related to any party to the matter, nor to any
17  counsel, nor do I have any financial interest in the event of
18  the cause.
19       WITNESS MY HAND AND DIGITAL SIGNATURE this 27th day of
20  November, 2013.
21
22
23  
    _____
24  CARLA R. WALLAT
    Washington State Certified Court Reporter, #2578
25  cwallat@yomreporting.com
```

Kusar  Keeping Your Word Is Our Business℠