**ROBERTS & KEHAGIARAS LLP**
CAMERON W. ROBERTS, ESQ. (State Bar No. 176682)
cwr@tradeandcargo.com
THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
tha@tradeandcargo.com
1 World Trade Center, Suite 2350
Long Beach, CA 90831
Telephone: (310) 642-9800
Facsimile: (310) 868-2923

Attorneys for plaintiffs
DAVID PARKER and BIG BIRD HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC., OCEAN ALEXANDER SERVICES, L.L.C., and OCEAN ALEXANDER MARINE YACHT SALES, INC. <br><br> Defendant. | **Case No. SACV12-1994 DOC(ANx)** <br><br> **DECLARATION OF DAVID PARKER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date:       June 2, 2014 <br> Time:       8:30 a.m. <br> Courtroom: 9D <br> Judge:      Hon. David O. Carter <br><br> Date Filed: November 14, 2012 |

I, David Parker, declare:

1. I have personal knowledge of the facts contained herein and if called as a witness could testify competently thereto.

2. Upon discovering defects in the hull of my Ocean Alexander yacht Jelly Bean II, I sent an e-mail to Johnny Cheuh giving notice of the defects and of my warranty claim.

3. During the course of the e-mail exchange I had with Mr. Cheuh regarding the defects and warranty claim, I received

1 an e-mail from Mr. Cheuh denying the claims on behalf of Ocean
2 Alexander on December 12, 2011. A true and correct copy of
3 this e-mail from Mr. Cheuh's is attached hereto as Exhibit A.
4     4. Subsequently, I had a further e-mail exchange with
5 Mr. Cheuh on December 14th and 15th, 2011, in which he
6 continued to deny the warranty claims on behalf of Ocean
7 Alexander. A true and correct copy of this exchange is
8 attached hereto as Exhibit B.

10     I declare under penalty of perjury under the laws of the
11 United States of America that the foregoing is true and
12 correct.

14 Dated: May 11, 2014

15                         David Parker

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

D:\Temp\295091351.1.DOC

PARKER DECLARATION IN SUPPORT OF
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT

**EXHIBIT "A"**

# Dave Parker

**From:** Johnny Chueh - Ocean Alexander [johnnychueh@hotmail.com]
**Sent:** Monday, December 12, 2011 6:57 PM
**To:** Dave Parker
**Subject:** Re: Jelly Bean (Report of findings & repair only)

Dear Dave and Al,

Thank you for providing the information in the past 2 weeks. After reviewing the below are our findings:

1. There was an impact/collision as confirmed by Al and yourself during the telephone calls dated December 4th. It was unclear what was hit nor what damage was sustained. It was also indicated that it was not possible to pull into shore, it took more than 10 hours before the boat could be pulled into port. The damage sustained during this period unfortunately cannot be documented.
2. There was a "lifting strap" damage when the boat was hauled out in San Diego. This lifting strap crushed the forward part of the extended keel and it is unclear the extend of damage nor was it repaired in San Diego. It is highly likely that either the collision mentioned above or the lifting strap, or both, could have caused the keel delamination and keel failures that the yacht is seeing.
3. It was indicated in Tim Nolan report dated Dec 7th and Jeffery Mallian Dec 1 report, that
   1. "Extended Keel is non structural" – this was by design as the extended keel is designed to break away upon impact. Thus, the extended keel, by design, is NOT to take the entire force of any impact/grounding and potential render the original keel and hull compromised. Thus, it is Ocean Alexander's professional opinion TO DISAGREE that the current repair methods advocated by Gambol. That is OA disagrees with reinforcement to make the extended keel structural. We believe this take on additional risk to the boat, in case of a collision may compromise the hull/original keel.
   2. "Certain areas of the hull, near keel, seem thin – around 1/2" of fiberglass." After studying information, the areas in question relied on secondary bonding to provide the thickness for structural integrity. The fact that a collision/strap damage had occurred and delamination of the structural bulkhead was witnessed, evidence this fact. Thus it is in Ocean Alexander's professional opinion that the FIBERGLASS WAS SUFFICIENT IN THICKNESS prior to impact and the only reason the measurements are 1/2" is due to the areas had delaminated due to impact.
   3. "Keel Extension poorly attached". Ocean Alexander DENIES this charge as the boat has been in the water for well over 5 years. There is no evidence that the tabbing was insufficient nor were delamination due to improper curing or fiberglass used. Post impact it is impossible to ascertain the soundness of the keel extension attachment except to say that it lasted for well over 5 years until the impact/lifting strap damage.
4. All the evidence point to collision/lifting strap damage – which should then be turned 100% over to the insurance companies. OA disagrees with the repair method and cannot participate in providing resources, parts/material when we do not believe in the inherent soundness of the solution being undertaken. I would strongly advise Dave, that you obtain the backing of the insurance company prior to progressing further.

I wish I could have had better news. But the simple fact is there was collision/lifting strap damage, and the repair already undertaken and being suggested is to undertake a route that we at OA CANNOT agree with nor

1

==sign off on.== Thus, Dave it is my strongest opinion that you have the insurance adjusters back you every step of the way on this, both verbally and in writing, and both technically and also financially.

Johnny

2

Parker000241

**EXHIBIT "B"**

**Dave Parker**
___

From:       Johnny Chueh - Ocean Alexander [johnnychueh@hotmail.com]
Sent:       Wednesday, December 14, 2011 7:28 PM
To:         Dave Parker
Subject:    Re: warranty problems

Dear Dave, Thank for your email. I am not sure how I can help you to look over the Gambol's numbers when I am not in agreement with the "structural" approach they are taking to install the keel extension. If they are following the engineering report of Jeffery Mallian, then they propose to make the extended keel structural by bonding to the hull (using secondary bonding) and with inserting bulkheads into the structure. As I have mentioned before, the original keel is structural and the extension piece was designed, and lasted 5years+, w/o being structural. This was a deliberate decision by Ocean Alexander to ensure in a collision it would reduce the risk of structural failure. We certainly do not built a "break away keel" as you mentioned. The original keel is structural, the break away is the extension part as we do not believe one can fully entrust the seaworthiness of a vessel to secondary bonding – underwater. As you have said so yourself there is nothing wrong the original keel and it continued to perform. It is the extension piece that Ocean Alexander has a fundamental disagreement with Gambol/Mallian about the method of repair. Since there was a collision, it really should be up to the insurance company to decide which method they will approve and pay for – since it is on their dime, so to speak.

Dave, from you email it sounds like Jelly Bean has not been hauled out in over 5 years? This is very distressing new, as the antifouling and many other systems of the boat is not designed to last 5 years w/o maintenance/inspection. There should be at least annual, at most 18 month haul out schedule for a yacht. I do not know about your insurance policy, but most insurance policies call for inspection of the hull bottom on an annual basis – you need to check this!! Also from what you are saying 5 years ago the Chine was "broken though" and repaired. If this was done it is certainly news to us, as Jim McLaren never alert us to a "broken chine" – not to mention the chine is solid fiberglass not foam filled. Unless I am misunderstanding something, Jim McLaren has not shared this with us about a "broken chine" that would be there is a hole in the hull – where the chine is? Is that what you are saying happened 5 years ago?
What I see here Dave is an impact that lead to keel extension being compromised and also bulkheads inside the boat compromised which tore away at the secondary bonding (thus leading to 1/2 fiberglass thickness). Dave, I have always believe that doing the right thing is more important than money, which we both have enough of. You do the right thing and the press/PR will take care of itself. However, I simply do not see where Ocean Alexander is responsible here. We built a boat with an original structural keel and nonstructural extended keel, that lasted for over 5 years w/o issue. A collision occurred and the extended keel was damaged and subsequent damage was also suffered by the secondary bulkheads in the bow of the boat. The question now is do you repair it back to way we delivered it (non structural extension keel) or "fiberglass the heck out of it" and make the extension structural and underwater. This is a question for the insurance company who has to pay and thus decide. There was a collision there is no doubt, you have collision coverage. Either the insurance pay for it or they have to find a reason to reject there was a collision. Dave, again, the boat safety performed for you for over 5 years – a collision happened– and now it needs to fixed.

Johnny
From: Dave Parker
Sent: Thursday, December 15, 2011 2:00 AM
To: johnnychueh@hotmail.com
Subject: warranty problems

13

Dear Johnny , Just a quick note to let you know we're still working on the numbers to make sure they are correct for you to check. Buy the way, I think you are a little confused about the strap damage causing the whole problem. The strap break through happened over five years ago just after delivery buy your agent, Orange Coast. After the boat show O/C hauled it out to correct warranty problems from your factory, namely the bottom not prepared correctly for bottom paint. The factory bottom paint was peeling off. Also the props had to be trued causing vibration. When it was hauled the straps broke through the chine do to the documented thin walls and foam core backing. The yard patched all damage and glassed over as requested by your agent. The whole haul out was paid as warranty work. There were no signs of keel damage at that time. When it was hauled this time over five years later, the patches were showing telltale hair line cracks. The yard notified Al and I. The yard opened up one of the patches and suggested we deal with the whole chine from the outside with back up layers. This new problem is not related to the keel problems at all. Also Johnny, no one we have talked to has ever heard of a breakaway keel. The whole idea of a keel is to protect the bottom and running gear, not to break off and sheer the running gear off causing a very quick sinking of the ship . the keel is designed to be the very strongest part of the ship to hold everything together. Your two engineers, who designed the boat at great cost to you can't believe you didn't follow the approved plans that I also signed off on when I placed my order. And by the way, the warranty on this boat is seven years and totally covers all the problems we have before us today. I don't want to get into a big nasty Fight with you Johnny ,but I will if I have to. I too have a very expensive attorney. I'm reaching out to you to do the right thing and step up to the plate. The negative press is and would be devastating to O/A .

2

Parker000245