```
1   RONALD G. ROSENBERG (Bar No. 108602)
    ROSENBERG & KOFFMAN
2   2029 Century Park East, Suite 1700
    Los Angeles, California 90067
3   Telephone: (310) 553-1400
    Facsimile: (310) 553-1401
4

5   Attorneys for Defendants,
    Ocean Alexander Marine Yacht Sales, Inc.
6   and Alexander Marine Co., Ltd.
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARKER and BIG BIRD HOLDINGS, LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALEXANDER MARINE CO., LTD, OCEAN ALEXANDER MARINE CENTER, INC., OCEAN ALEXANDER SERVICES, L. L. C., and OCEAN ALEXANDER MARINE YACHT SALES, INC.<br><br>　　　　Defendants. | Case No. SACV12-1994 DOC(ANx)<br><br>**DECLARATIONS IN SUPPORT OF REPLY TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　June 2, 2014<br>Time:　　8:30 a.m.<br>Courtroom: 9D |

DECLARATION OF JOHNNY CHUEH

I, Johnny Chueh, declare:

1. I have personal knowledge of the facts contained herein and if called as a witness, I could and would testify competently thereto.

2. I am, and always have been, the sole shareholder and director of Defendant, Ocean Alexander Marine Yacht Sales, Inc. ("OAMYS").

3. OAMYS was not involved in the design or construction of the yacht which forms the subject of this action.

4. OAMYS did not sell and was not in any way involved with the importation, sale or any repairs to the Plaintiffs' yacht known as Jelly Bean II.

5. OAMYS did not provide any warranty on the Jelly Bean II and did not review, analyze of get involved in any way with a claim for damages or a warranty claim of Plaintiffs relating to the Jelly Bean II. OAMYS did not adopt or get involved in any way with any warranty provided by Alexander Marine co., Ltd. relating to the Jelly Bean II.

6. I have read the December 11 and 14, 2011 emails attached to the Declaration of David Parker filed in Opposition to the pending Motion for Summary Judgment. I have also attached hereto and incorporate herein as Exhibit "2" other emails between Mr. Parker and myself relating to his claim for damages to his yacht. The references in those emails to "Ocean Alexander" are not to OAMYS. When I was referencing Ocean Alexander in those emails, he and I were referring to the Alexander Marine Co., Ltd., which is the manufacturer of Mr. Parker's yacht.

7. The yachts manufactured by Alexander Marine Co., Ltd. are identified as "Ocean Alexander" yachts and indeed the logos for the yachts are "OA" and "Ocean Alexander". As a result, everyone in the industry and in the yachting world, including myself, refers to them and the manufacturer by "Ocean Alexander".

8. Mr. Parker and I have known each other for many years since he has owned 5 Ocean Alexander yachts. He knew that I worked for the factory at that time and it was for this reason that he contacted me directly about his yacht in December 2011. He was making a warranty claim to the factory and was allegedly looking for feedback on what the factory recommended for repairs to his yacht. In December 2011, when these emails were exchanged, I was working for the manufacturer, Alexander Marine Co., Ltd. After my father became ill and passed away a number

1  of years ago, I worked for Alexander Marine Co., Ltd. for a period of time. I have
2  not worked for it since June of last year.

3     9. There is a reference in Mr. Atkinson's Declaration to testimony of Ray
4  Prokorym (improperly labeled as Exhibit "A" to his Declaration.) Mr. Prokorym
5  mistakenly identified an email address for tim@oceanalexander.com. That address
6  belongs to Tim Lai at Alexander Marine Co., Ltd. in Taiwan and not to Tim Curry
7  in Seattle. Mr. Curry's email address is timcurry@oceanalexander.com.

8     10. To the best of my recollection, Mr. Parker never dealt with OAMYS.

9     11. I signed a Declaration in this lawsuit on May 6, 2014 and I declare that it
10 signed under penalty of perjury under the laws of the United States of America and
11 that the statements made therein are true and correct.

12     I declare under penalty of perjury under the laws of the United States of
13 America that the foregoing is true and correct.

14     Executed this 20th day of May 2014 in Taiwan.

15
16                                     2014.05.20 14:07:16 +08'00'
    Johnny Chueh

## DECLARATION OF HSIUNG WEI TSENG

1. I am the President of Defendant, Alexander Marine Co., Ltd. ("Alexander Marine").

2. I have personal knowledge of the facts contained herein and if called as a witness, I could and would testify competently thereto.

3. I signed a Declaration in this lawsuit on April 30, 2014 and I declare that it signed under penalty of perjury under the laws of the United States of America and that the statements made therein are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 day of May 2014.

_____
Hsiung Wei Tseng

**EXHIBIT 2**

## Dave Parker

**From:** Dave Parker [dparker@pelicandevcorp.com]
**Sent:** Monday, December 05, 2011 10:08 AM
**To:** 'johnnychueh@hotmail.com'
**Subject:** From Dave Parker regarding Jelly Bean II

Dear Johnny,

I hope my email finds you and your family well and looking forward to the New Year. We have not spoken in some time but I trust everything is fine with you. I am completely retired now and busier than ever!

I have always been one of your biggest fans and purchaser of now five (5) new Ocean Alexander boats, starting with the 43', '54', 61', 86' and now Jelly Bean II 98'. ' I have been very happy with each and every boats' quality, performance and warranty services. I have stated this fact in many published magazine articles and Ocean Alexander advertising brochures for over 35 years now. As of result of that, the Jelly Bean and I are recognized everywhere we go. It never fails that many west coast boaters always stop, admire and inquire about how much I love the quality and workmanship of the Jelly Bean. They always want to know what it was like to build a one off custom boat, as beautiful as she is.

As you recall, we had the battery meltdown issue on Jelly Bean II, six months after delivery. Anticipating that my boat would never be the same, I went to Westport and ordered a new Westport 112' boat, based on selling the Jelly Bean when it was repaired. As the two boats neared their completion dates, at approximately the same time, I realized I was making a big mistake if I were to sell the Jelly Bean when it was launched. I decided instead to sell the brand new Westport and keep the Jelly Bean, as that was the boat I truly loved, much to the chagrin of Westport management. I had paid for the Westport in full and never even boarded or attended the launch of the Westport after she was completed. My heart was with the Jelly Bean II and still is. I sold the Westport at a 2 million dollar loss.

Johnny, the reason for this letter is to give you a firsthand heads up on a new major problem that was discovered this week. As far as I know, the problems are totally confidential at this point and I have asked the boatyard to keep it confidential until I could get this heads up to you.

The Jelly Bean II was hauled last week in preparation for an upcoming 3 month trip to Mexico for normal bottom maintenance. Immediately after hauling the boat at Gambol Industries, Inc., located in Long Beach in their dry dock boatyard, which has been hauling my boat for maintenance since new, it was discovered that the keel of the boat was leaking water about mid ship. This leaking of seawater went on for several days straight and roughly totaled 500-800 gallons of water from the keel.

The boatyard notified my captain, Al Perry and myself to come there to inspect the problem shortly after the boat was in dry dock. As you know the keel is a watertight compartment in itself. The yard drilled and cut a number of inspection ports from bow to stern along each side of the keel. We discovered that very little rigid support foam was contained in the new keel and virtually no fabricated support bulkheads were in the keel. The added 2nd keel, with only ½" walls, had been fabricated and placed over the original molded keel, an extension of approximately 30 ft.

Three days ago, my insurance company, ACE Insurance, brought in several different licensed surveyors trying to determine what went wrong. Upon close inspection, it was discovered that much of the laminating matt and resin of the new keel onto the original keel was far short of standard thickness and almost completely delaminating from the original molded keel area. Much of the resin and matt had never cured after all this time and had a noticeable uncured resin odor, making for a completely unacceptable and dangerous situation.

1

EXHIBIT NO. 11
11-15-13
C. WALLAT, CCR, RPR, CRR

Parker000236

Today we brought in Tim Nolan from Port Townsend, Washington, and one other marine architect to attempt to ascertain the extent of this damage and its' origin. The preliminary unpublished opinion by the boatyard management, insurance surveyors and Tim Nolan, is that not only is the thickness of the fiber glass laminating under design call out spec, it is severely delaminating from the molded original hull with noticeable uncured resin almost the whole length of the keel with virtually no supporting bulkheads inside -between the old and new keel overlay – as well as original keel compartment. Tim Nolan has supplied us with copies of original detailed production drawings that were furnished to you regarding the correct procedure for securing the 2nd keel to the internal bulkheads. The inspection today seems to show departure from his drawings had taken place.

Inspection further revealed the 2nd 'added keel' was not bonded correctly to the boats' inside bulkheads. This caused the added new keel to work back and forth when at sea causing numerous cracks and loss of watertight integrity. When the boat settled on the stands, it is believed that the added weight from the trapped seawater caused the new keel to collapse onto the lower hull bulkheads – which were not bonded to the new 2nd keel.

Obviously we're talking about a major and extremely dangerous problem on Jelly Bean II's hull. I think it would be in your very best interest to send one of your best engineers and construction managers down here as soon as possible to access the entire situation and form your own opinion before all of these inspection holes in the keel are closed during repairs.

I believe that the Jelly Bean was built at the same time as your own '98 you built for yourself. As I recall, during this period of time, many of your best experienced engineers, management and workman were on Mainland China opening your manufacturing facility for the new boat line you started.

As you can imagine, news of this nature is not in either of our best interests if not handled quickly and quietly, should this be made public in the boating industry. I think we are at the threshold of a very serious and potentially dangerous problem which I would think you would want to address as quickly as possible from a public relations and legal viewpoint.

The rough estimate at this point is $800,000.00 dollars and climbing for repairs. Gambol feels it is repairable, based on what they have discovered so far.

Johnny, I am heartsick over the thought that the Jelly Bean II may not be repairable. Two years ago, I put "The Bean" on the market and a week later realized that there was no way I could sell her and took her off the market.

The ball is now in your court. I felt out of my respect for you, I owed you this heads up before the word of this gets out into the industry. I can probably get Gambol to hold off plugging up and glassing out the inspection holes that were made - for this next week or so.

Gambols, the surveyors, Captain Al Perry and today, Tim Nolan, have spent hours reviewing and documenting their observations and discoveries with hundreds of photographs. Once again, I cannot express the importance of your own people accessing this situation as well. I think the possibility of splitting the cost of repair may be something to be considered, so we may all bring this to a swift and quiet resolution.

I will keep you abreast of all events as they are discovered. Please contact me at your earliest convenience. I would very much like to hear your thoughts on this at this juncture. My personal cell phone number is 310-283-0606.

Best regards,
Dave

2

**Dave Parker**

From: Johnny Chueh - Ocean Alexander [johnnychueh@hotmail.com]
Sent: Monday, December 12, 2011 6:57 PM
To: Dave Parker
Subject: Re: Jelly Bean (Report of findings & repair only)

Dear Dave and Al,

Thank you for providing the information in the past 2 weeks. After reviewing the below are our findings:

1. There was an impact/collision as confirmed by Al and yourself during the telephone calls dated December 4th. It was unclear what was hit nor what damage was sustained. It was also indicated that it was not possible to pull into shore, it took more than 10 hours before the boat could be pulled into port. The damage sustained during this period unfortunately cannot be documented.
2. There was a "lifting strap" damage when the boat was hauled out in San Diego. This lifting strap crushed the forward part of the extended keel and it is unclear the extend of damage nor was it repaired in San Diego. It is highly likely that either the collision mentioned above or the lifting strap, or both, could have caused the keel delamination and keel failures that the yacht is seeing.
3. It was indicated in Tim Nolan report dated Dec 7th and Jeffery Mallian Dec 1 report, that
    1. "Extended Keel is non structural" – this was by design as the extended keel is designed to break away upon impact. Thus, the extended keel, by design, is NOT to take the entire force of any impact/grounding and potential render the original keel and hull compromised. Thus, it is Ocean Alexander's professional opinion TO DISAGREE that the current repair methods advocated by Gambol. That is OA disagrees with reinforcement to make the extended keel structural. We believe this take on additional risk to the boat, in case of a collision may compromise the hull/original keel.
    2. "Certain areas of the hull, near keel, seem thin – around 1/2" of fiberglass." After studying information, the areas in question relied on secondary bonding to provide the thickness for structural integrity. The fact that a collision/strap damage had occurred and delamination of the structural bulkhead was witnessed, evidence this fact. Thus it is in Ocean Alexander's professional opinion that the FIBERGLASS WAS SUFFICIENT IN THICKNESS prior to impact and the only reason the measurements are 1/2" is due to the areas had delaminated due to impact.
    3. "Keel Extension poorly attached". Ocean Alexander DENIES this charge as the boat has been in the water for well over 5 years. There is no evidence that the tabbing was insufficient nor were delamination due to improper curing or fiberglass used. Post impact it is impossible to ascertain the soundness of the keel extension attachment except to say that it lasted for well over 5 years until the impact/lifting strap damage.
4. All the evidence point to collision/lifting strap damage – which should then be turned 100% over to the insurance companies. OA disagrees with the repair method and cannot participate in providing resources, parts/material when we do not believe in the inherent soundness of the solution being undertaken. I would strongly advise Dave, that you obtain the backing of the insurance company prior to progressing further.

I wish I could have had better news. But the simple fact is there was collision/lifting strap damage, and the repair already undertaken and being suggested is to undertake a route that we at OA CANNOT agree with nor

1

sign off on. Thus, Dave it is my strongest opinion that you have the insurance adjusters back you every step of the way on this, both verbally and in writing, and both technically and also financially.

Johnny

Parker000241

**Dave Parker**

From: Jim McLaren [jimmclaren@sbcglobal.net]
Sent: Tuesday, December 13, 2011 4:51 PM
To: dparker@pelicandevcorp.com
Subject: 98001 Warranty
Attachments: 98001 Warranty.docx

Dave,

You have a 7 years warranty on the boat for structurally defective parts built by Ocean Alexander. The warranty is enclosed and I highlighted the part of 7 years. I talked to Ed Monk and he had never heard of a breakaway keel. He also said the real expert on the construction is Tim Nolan and he is the one to get your best advise.

Jim

**Dave Parker**

From: Dave Parker [dparker@pelicandevcorp.com]
Sent: Wednesday, December 14, 2011 10:01 AM
To: 'johnnychueh@hotmail.com'
Subject: warranty problems

Dear Johnny, Just a quick note to let you know we're still working on the numbers to make sure they are correct for you to check. Buy the way, I think you are a little confused about the strap damage causing the whole problem. The strap break through happened over five years ago just after delivery buy your agent, Orange Coast. After the boat show O/C hauled it out to correct warranty problems from your factory, namely the bottom not prepared correctly for bottom paint. The factory bottom paint was peeling off. Also the props had to be trued causing vibration. When it was hauled the straps broke through the chine do to the documented thin walls and foam core backing. The yard patched all damage and glassed over as requested by your agent. The whole haul out was paid as warranty work. There were no signs of keel damage at that time. When it was hauled this time over five years later, the patches were showing telltale hair line cracks. The yard notified Al and I. The yard opened up one of the patches and suggested we deal with the whole chine from the outside with back up layers. This new problem is not related to the keel problems at all. Also Johnny, no one we have talked to has ever heard of a breakaway keel. The whole idea of a keel is to protect the bottom and running gear, not to break off and sheer the running gear off causing a very quick sinking of the ship. the keel is designed to be the very strongest part of the ship to hold everything together. Your two engineers, who designed the boat at great cost to you can't believe you didn't follow the approved plans that I also signed off on when I placed my order. And by the way, the warranty on this boat is seven years and totally covers all the problems we have before us today. I don't want to get into a big nasty Fight with you Johnny, but I will if I have to. I too have a very expensive attorney. I'm reaching out to you to do the right thing and step up to the plate. The negative press is and would be devastating to O/A.

Parker000243