**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **DAVID PARKER and BIG BIRD HOLDINGS, LLC** <br><br> **Plaintiffs,** <br><br> vs. <br><br> **ALEXANDER MARINE CO., LTD. and OCEAN ALEXANDER MARINE YACHT SALES, INC.** <br><br> **Defendants.** | Case No.: SACV 12-1994-DOC (ANx) <br><br> **ORDER GRANTING DEFENDANT OCEAN ALEXANDER MARINE YACHT SALES, INC.'S MOTION FOR SUMMARY JUDGMENT [27]** |

Before the Court is Defendant Ocean Alexander Marine Yacht Sales, Inc.'s Motion for Summary Judgment ("Motion" or "Mot.") (Dkt. 27). After reviewing the Motion, Plaintiffs' Opposition ("Opp'n") (Dkt. 36), and Defendant's Reply ("Reply") (Dkt. 39), the Court GRANTS the Motion on the issue of OAMYS's alter ego liability.

## I. BACKGROUND

Plaintiff David Parker ("Parker") purchased a yacht, the *Jelly Bean 2*, in July 2005 for approximately $4,250,000. He purchased the vessel from Orange Coast Yachts ("Orange Coast"), a yacht dealer in California who is not a party to this litigation. Parker maintained title to the yacht through Plaintiff Big Bird Holdings, LLC ("Big Bird"). Compl. ¶ 13-15. In November 2011, Plaintiffs discovered various deficiencies in the hull of the yacht. *Id.* ¶ 20. Plaintiffs subsequently paid for over $1,000,000 in repairs. *Id.* ¶ 25. On November 14, 2012, Plaintiffs filed suit in this Court against Defendants Alexander Marine Co., Ltd. ("Alexander Marine"), Ocean Alexander Marine Yacht Sales, Inc. ("OAMYS"), Ocean Alexander Marine Services, LLC ("OAMS"), and Ocean Alexander Marine Center, Inc. ("OAMC"), alleging claims of breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular use, violation of California's Song-Beverly Act, and the federal Magnuson-Moss Warranty Act.

Only Defendants Alexander Marine and OAMYS remain in the case. The parties stipulated to dismiss Defendants OAMS and OAMC. Order, May 8, 2014 (Dkt. 33); Stip. to Dismiss Defs., May 7, 2014 (Dkt. 30). Defendant Alexander Marine is a yacht manufacturer based in Taiwan. Compl. ¶ 6. Defendant OAMYS is a corporation incorporated in Washington state. Declaration of Johnny Chueh in Support of Mot. Ex. 1 (Dkt. 27). OAMYS, like Orange Coast, is a yacht dealer. Declaration of Johnny Chueh in Support of Mot. Ex. 1 ("Chueh Decl. I") (Dkt. 27) ¶¶ 3, 6.

Plaintiffs alleged in their complaint that Alexander Marine and OAMYS "are, and were at all relevant times, the alter egos of each other and are so controlled and dominated by them as to justify disregard of the separate existence of these entities." Compl. ¶ 10. Plaintiffs' other allegations partially reflect this belief. Plaintiffs allege that "defendants" sold the yacht to Parker. Plaintiffs allege that "prior to and at the time of purchase," "defendants" made various representations to Parker regarding the yacht's seaworthiness, including several representations about the vessel's hull and structure. Plaintiffs allege that at the time of purchase, "defendants" issued an express warranty, including a seven-year warranty as to the vessel's hull and

1  structure. *Id*. ¶¶ 16-17. At some point after the sale of the *Jelly Bean 2*, the Alexander Marine's
2  relationship with its California yacht dealer, Orange Coast, terminated. Plaintiffs allege that,
3  afterward, Alexander Marine "assigned responsibility for the handling of [American Marine's]
4  written warranties for the Jelly Bean2 to defendants OAMS, OAMC, and  [OAMYS], and
5  defendants OAMS, OAMC, and [OAMYS] adopted and assumed those written warranties." *Id*.
6  ¶ 18; Mot. at 4; Opp'n at 3. Pursuant to the written warranty, "defendants" paid for various
7  repairs to the *Jelly Bean 2* shortly after Parker purchased the vessel. However, "defendants"
8  refused to inspect the vessel or pay for repairs for the problems in the vessel's hull discovered
9  by Plaintiffs on November 16, 2011, even though Plaintiffs promptly notified "defendants" of
10 those problems. *Id*. ¶¶ 19-24.

Defendant OAMYS filed this Motion for Summary Judgment on May 5, 2014 and noticed the hearing on the motion for June 2, 2014. As is this Court's practice, the hearing date was moved to the motion cut-off date, October 6, 2014, so that the motion for summary judgment could be heard after the close of discovery. Discovery having closed on August 15, 2014, this Motion is now ripe for resolution.

OAMYS seeks summary judgment on the ground that Plaintiffs have insufficient evidence to prove that OAMYS is liable as an alter ego of Alexander Marine. For the reasons below, the Court GRANTS the Motion on the issue of OAMYS's alter ego liability.

**II.   LEGAL STANDARD**

   **A. Motion for Summary Judgment**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating

1 the absence of a genuine issue of material fact for trial, but it need not disprove the other
2 party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving
3 the claim or defense, the moving party can meet its burden by pointing out that the non-moving
4 party has failed to present any genuine issue of material fact as to an essential element of its
5 case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

6 Once the moving party meets its burden, the burden shifts to the opposing party to set
7 out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at
8 248-49. A "material fact" is one which "might affect the outcome of the suit under the
9 governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply
10 by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v.*
11 *Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific,
12 admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the
13 record" looking for other evidence; it is only required to consider evidence set forth in the
14 moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P.
15 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme
16 Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there
17 must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty*
18 *Lobby*, 477 U.S. at 252.

19 **B. Alter Ego Doctrine**

20 The alter ego doctrine is used when the corporate form is used to perpetuate a fraud or
21 engage in other wrongdoing. Under the doctrine, the courts will look past the legal fiction of
22 the corporate entity and attribute the corporation's actions to those of the natural or corporate
23 persons actually controlling the corporation, the equitable owners. The alter ego doctrine
24 applies when (1) there exists "such a unity of interest and ownership between the corporation
25 and its equitable owner that the separate personalities of the corporation and the shareholder do
26 not in reality exist" and (2) treating the acts in question as the corporation's acts alone would
27 create an inequitable result. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523,
28 538 (2000). In determining whether the alter ego doctrine should be applied, courts consider

various factors such as "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other," as well as "inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Id.* at 538-39 (internal quotation marks and citations omitted). No one factor is dispositive. *Id.* at 539.

### III. ANALYSIS

Defendant OAMYS argues that summary judgment on all five of Plaintiffs' claims is appropriate because there is insufficient evidence that OAMYS is an alter ego of the yacht manufacturer Alexander Marine. Mot. at 1-2. Plaintiffs respond that there are triable facts as to whether OAMYS is the alter ego of Alexander Marine. Opp'n at 10-12.

#### A. Whether There is a Genuine Issue of Material Fact as to OAMYS's Alleged Status as the Alter Ego of Alexander Marine

In arguing that it is not the alter ego of Alexander Marine. OAMYS relies entirely on four declarations attached to its Motion and Reply. There are two each from Johnny Chueh and Hsiung Wei Tseng. Declaration of Johnny Chueh in Support of Mot. ("Chueh Decl. I") (Dkt. 27); Declaration of Johnny Chueh in Support of Reply ("Chueh Decl. II") (Dkt. 39-1); Declaration of Hsiung Wei Tseng in Support of Mot. ("Tseng Decl. I") (Dkt. 27); Declaration of Hsiung Wei Tseng in Support of Reply ("Tseng Decl. II") (Dkt. 39-1).[1]

According to these declarations, Johnny Chueh is the sole shareholder and director of OAMYS and a 6-7% shareholder in Alexander Marine. Chueh Decl. I ¶¶ 2, 7; Chueh Decl. II ¶ 2. His father founded Alexander Marine in 1978. After his father became ill and passed away several years ago, Mr. Chueh worked for Alexander Marine for a period of time. The declaration did not provide particular dates, but Mr. Chueh worked for Alexander Marine at

---

[1] Plaintiffs argue that Chueh Decl. I and Tseng Decl. I are inadmissible because they were signed under penalty of perjury "under the laws of the State of California" rather than "under the laws of the United States of America," the latter being the model language for unsworn declarations provided in 28 U.S.C. § 1746. *See* Pls.' Separate Statement in Opp'n to Def.'s Mot. (Dkt. 36-1), at 5. This argument raises form over substance. 28 U.S.C § 1746 requires only that unsworn declarations be "substantially similar in form" to the model language. Moreover, OAMYS corrected this error in Chueh Decl. II and Tseng Decl. II, in which the declarants affirm that their previous statements were "signed under penalty of perjury under the laws of the United States of America."

least between December 2011 and June 2013. Chueh Decl. II ¶ 8. Hsiung Wei Tseng has worked for Alexander Marine for over 10 years and became the president of the company in June 2013. Tseng Decl. I ¶ 3.

According to these declarations, Alexander Marine is a Taiwanese corporation that has never had offices in the United States. Alexander Marine sells its yachts to dealers in various countries, including the United States, through agreements with dealers. Alexander Marine does not have any ownership interest in OAMYS or any other company in the United States. OAMYS, which is incorporated in Washington state, is currently a sales agent for boats manufactured by Alexander Marine in Taiwan but OAMYS was not involved in the 2005 sale of the *Jelly Bean 2* to Parker because Orange Coast had an exclusive dealership agreement with Alexander Marine in California at that time and up until fall 2009. Chueh Decl. I ¶¶ 3, 5.

In arguing that there is a triable issue as to OAMYS's alter ego status, Plaintiffs point to an October 2009 email sent by Chueh to Jim McLaren, a part owner and employee of Orange Coast, terminating Orange Coast's independent sales agent relationship with Alexander Marine. Opp'n at 10. Chueh signed that email as "President—Alexander Marine." Declaration of James McLaren in Support of Pls.' Opp'n Ex. A (Dkt. 36-4). In that same email, Chueh directs McLaren to "Please direct all warranty items to tim@oceanalexander.com where Alexander Marine will be involved directly with the customer." *Id.*

Plaintiffs also point to another email, sent by Mr. Chueh to Plaintiff Parker on December 12, 2011, which repeatedly refers to "Ocean Alexander's professional opinion" regarding the repairs needed for *Jelly Bean 2*. Declaration of David Parker in Support of Pls.' Opp'n Ex. A (Dkt. 36-3). Defendant OAMYS respond that the references to "Ocean Alexander" were actually references to Alexander Marine. According to Chueh, since Alexander Marine's yachts are branded as "Ocean Alexander" or "OA" yachts, it is common in the yachting world to refer to Alexander Marine as "Ocean Alexander." Chueh Decl. II ¶ 7.

In light of this evidence, the Court agrees with Defendant that there are no genuine issues of material fact underlying Plaintiffs' contention that OAMYS is an alter ego of Alexander Marine. As the author of the emails and as the sole shareholder and director of

1  OAMYS, the son of Alexander Marine's father, and the president of Alexander Marine during
2  the relevant times, Mr. Chueh is in the best position to know to whom "Ocean Alexander" and
3  "Alexander Marine" referred in the emails raised by Plaintiffs. Besides the fact that Chueh is
4  affiliated with both Alexander Marine and OAMYS and the fact that the names "Alexander
5  Marine" and "Ocean Alexander" seem to be used interchangeably, Plaintiffs have not offered
6  any other evidence regarding abuse of the corporate form. There is no evidence, for instance,
7  that the two corporate entities comingled their funds or were liable for the debts of the other.
8  There is no evidence that either entity is or was undercapitalized. Under these circumstances, a
9  reasonable jury could not find that OAMYS was the alter ego of Alexander Marine. Thus, the
10 Court GRANTS Defendant OAMYS's Motion for Summary Judgment on the issue of
11 OAMYS's alter ego status.

### B. Other Bases for OAMYS's Liability

OAMYS did not initially address in its Motion Plaintiffs' other theories of liability, perhaps under the mistaken impression that Plaintiffs only alleged OAMYS's liability under an alter ego theory. As Plaintiffs pointed out in opposition, however, the Complaint also alleges that OAMYS—technically one of the "defendants" referred to in paragraph 12 of the Complaint—imported the *Jelly Bean 2*. Compl. ¶ 12; *see* Opp'n at 8. The "defendants" admitted to the averments in paragraph 12 in their joint Answer. Answer ¶ 12. If OAMYS was an importer, then it could be held liable for breaches of implied and express warranties as a distributor. *See, e.g.*, Cal. Civ. Code § 1791.2 (defining an express warranty as a written statement pursuant to which a manufacturer, distributor, or retailer guarantees the utility of a consumer good); *id.* § 1792.2 (creating an implied warranty of fitness for a particular purpose for consumer goods sold by a retailer or distributor). The Complaint also alleges that OAMYS adopted and assumed the obligations of the express warranty made by Alexander Marine to Parker, which Defendants denied in their joint Answer. Compl. ¶ 18; Answer ¶ 18. In reply, OAMYS argues that it was not involved in importing the yacht and that Plaintiffs never contacted OAMYS (as opposed to Alexander Marine) regarding warranties. Thus, since

OAMYS was not a distributor and did not adopt any warranty, OAMYS is not liable for any breach of warranty. Reply at 3-4.

The Court suspects that the confusion regarding whether OAMYS was involved in importing the *Jelly Bean 2*, which in turn partially controls whether OAMYS can be held liable for a breach of express and implied warranty, stems from sloppy drafting on both sides. The Complaint alleges that "defendants" (including OAMYS) imported the *Jelly Bean 2*, Compl. ¶ 12, and that "defendants" issued an express warranty, *id.* ¶ 17. The Complaint then goes on to allege that Alexander Marine assigned responsibility for handling its written warranties to OAMYS, among others. *Id.* ¶ 18. If OAMYS was included among the "defendants" in paragraphs 12 and 17, then there would be no need for OAMYS to adopt the express warranties it supposedly made. Thus, it seems that Plaintiffs likely meant to use the singular "defendant" in paragraphs 12 and 17. It is possible that Plaintiffs meant to state the warranty adoption theory as an alternative. Defendants, on their part, did nothing to clear up this confusion. In their answer, "defendants" (including OAMYS) admitted to importing the *Jelly Bean 2*, denied issuing an express warranty and denied the allegations regarding the transfer of warranty responsibilities from Alexander Marine to OAMYS. The Answer made no distinction between Defendants as OAMYS attempts to do now through its motion for summary judgment, so the Court cannot tell if OAMYS's admission to importing the *Jelly Bean 2* was a mistake or not.

The Court had hoped to clear up this confusion at oral argument.[2] However, at oral argument, OAMYS only repeated its argument that Chueh stated in his declaration that OAMYS was not involved in the importation of the *Jelly Bean 2*. Based on this record, the Court is not persuaded that OAMYS carried its burden as the movant for summary judgment. OAMYS did not seek summary judgment on the direct liability issues in its original Motion and OAMYS's brief reply (the Court notes that OAMYS used wrote four pages for the reply) did not persuasively lay out the evidence in its favor. Nor did it persuasively dispute Plaintiffs' evidence

---

[2] Plaintiffs did not appear at the hearing. *See* Minutes of Mot. Hr'g, Oct. 6, 2014 (Dkt. 49). As stated at the hearing, the Court will not entertain a motion for reconsideration from Plaintiffs, who forewent the opportunity to have their side heard. *See* L.R. 7-15 ("Failure of any counsel to appear, unless excused by the Court in advance pursuant to L.R. 7-15 or otherwise, may be deemed consent to a ruling upon the motion adverse to that counsel's position.").

or explain why "defendants" admitted to importing the *Jelly Bean 2*. Thus, it appears that there is still a genuine dispute over the material facts of who was involved in importing the *Jelly Bean 2* and whether OAMYS was involved in warranty claims on the *Jelly Bean 2*. Accordingly, the Court will not grant summary judgment as to the direct liability issues.

### IV.    DISPOSITION

Thus, the Court GRANTS Defendant OAMYS's Motion for Summary Judgment on the issue of OAMYS's alter ego status.

DATED:  October 8, 2014

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE